UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| KERRY HINKLE, Administrator of the | ) | |
| Estate of Kiara Hinkle, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3: 11-24-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FORD MOTOR COMPANY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of Defendant Ford Motor Company's Motion for Partial Summary Judgment.[1]  [Record No. 39]  Ford seeks summary judgment with respect to certain categories of damages claimed by Plaintiffs Kerry Hinkle, Administrator of the Estate of Kiara Hinkle; Jason Turner; and Natya Stafford.  For the reasons explained below, Ford's motion will be granted, in part, and denied, in part.

**I.**

This action arises out of a single-vehicle accident that occurred on April 11, 2010, on Interstate 64 in Franklin County, Kentucky.  The driver, Kiara Hinkle, was killed in the accident. Passengers Jason Turner and Natya Stafford were injured.  Turner, Stafford, and Hinkle's estate sued Ford, asserting claims of strict liability and negligence.  [Record No. 1-2, pp. 5-8]  They

---

[1]  Also pending are three Motions in Limine [Record Nos. 34, 36, 38], which will be addressed separately.

allege that the vehicle involved in the crash, a 2004 Mercury Mountaineer, was defective because it did not have electronic stability control ("ESC") or roll stability control ("RSC"), features that help prevent rollover.[2]  [*Id.*, p. 4 ¶¶ 14-15]  Additionally, the Estate of Kiara Hinkle asserted a claim of wrongful death under KRS § 411.130.  [*Id.*, pp. 8-9]  The plaintiffs sought damages for "[p]ast and future pain and suffering," "[p]ast and future mental suffering," "[l]oss of enjoyment of life," "[e]motional distress," "[p]ast and future medical expenses," "[d]amage to personal property," and "Kiara Hinkle's wrongful death," as well as punitive damages.  [*Id.*, pp. 9-10]

Ford argues that the Estate of Kiara Hinkle may not recover damages for loss of enjoyment of life and that such damages are not separately recoverable by Turner and Stafford. [Record No. 39-1, pp. 2-3]  It further contends that Kiara Hinkle's estate may not recover damages for "loss of family services."  [*Id.*, pp. 3-4]  Finally, Ford asserts that the plaintiffs should not be allowed to seek punitive damages at trial.  [*Id.*, pp. 4-6]

## II.

Summary judgment is appropriate when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see* (c)(1).  In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To avoid summary judgment, the nonmoving party must do more than cast some "metaphysical doubt" on the material facts.  *Chao v. Hall Holding Co.*, 285 F.3d

---

[2]  The Court previously granted Ford's unopposed motion for partial summary judgment limiting the plaintiffs' theory of liability to the lack of ESC or RSC.  [Record No. 52]

415, 424 (6th Cir. 2002) (citing *Matsushita*, 475 U.S. at 586). Instead, it must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment. *Id.*

As an initial matter, two aspects of Ford's motion are rendered moot by the plaintiffs' response. First, the plaintiffs explain that Turner and Stafford do not seek a separate award of damages for loss of enjoyment of life, also known as hedonic damages. [*See* Record No. 42, p. 4] They also state that Kiara Hinkle's estate "will not seek damages for loss of family services at trial." [*Id.*] Therefore, Ford's motion will be granted with respect to these issues, and the Court need only consider the two remaining questions; namely, whether the Estate of Kiara Hinkle may recover hedonic damages and whether the plaintiffs are entitled to pursue punitive damages.

### A.     Hedonic Damages (Estate of Kiara Hinkle)

Ford argues that Kiara Hinkle's estate cannot be awarded hedonic damages because "this type of damage is not recoverable in a wrongful death action." [Record No. 39-1, p. 2 (citing *Estate of Shearer v. T&W Tool & Die Corp.*, No. 08-175-KSF, 2010 U.S. Dist. LEXIS 73197, at *6-8 (E.D. Ky. July 19, 2010))] The plaintiffs do not dispute this rule. However, they point out that the Estate has also asserted personal-injury claims, for which pain-and-suffering damages are available. [*See* Record No. 42, p. 3 (citing *Shearer*, 2010 U.S. Dist. LEXIS 73197, at *7-8)] The plaintiffs further note that the Estate does not seek "hedonic damages as a separate category of loss," but rather "as a component of pain and suffering." [*Id.*, p. 2]

Ford's reply in support of its motion presents a different question: whether the Estate may recover damages for pain and suffering, including hedonic damages, on its personal-injury claims. [*See* Record No. 51, pp. 2-3.] Ford acknowledges that "under Kentucky law, recovery may be made for injuries suffered during the period of time between the injury and death," provided the injured person was conscious for part or all of that time. [*Id.*, p. 2 (citing, *inter alia*, *Vitale v. Henchey*, 24 S.W.3d 651, 659 (Ky. 2000))] It now contends that damages for pain and suffering are unavailable to the Estate because there is no evidence that Kiara Hinkle was conscious after the accident.[3] [*Id.*] This is not the issue that was raised in Ford's motion, and the plaintiffs have had no opportunity to respond to it. Therefore, the Court declines to consider whether pain-and-suffering damages are available to the Estate. Because Ford has not shown that the Estate is prohibited from pursuing hedonic damages, as originally argued, summary judgment on this issue will be denied.

### B.    Punitive Damages

Ford is entitled to summary judgment on the issue of punitive damages. A plaintiff may recover punitive damages under Kentucky law with a showing, by clear and convincing evidence, that the defendant's misconduct amounted to gross negligence — *i.e.*, that the defendant acted with a "'wanton or reckless disregard for the lives, safety or property of others.'" *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 52 (Ky. 2003) (quoting *Horton v. Union Light, Heat, & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985)) (other internal quotation marks

---

[3] Ford points to deposition testimony by passenger Aubrey Barton that after the accident, Hinkle "'was like unconscious'" and "'was out.'" [Record No. 51, p. 3 (quoting Dep. of Aubrey Barton, Record No. 51-1, pp. 2-3)]

omitted); *see* KRS § 411.184(2).  The heightened standard of proof for punitive damages applies at the summary-judgment stage.[4]  *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Thus, the Court must determine "whether the evidence presented is such that a jury applying [the clear-and-convincing] standard could reasonably find for either the plaintiff or the defendant."  *Anderson*, 477 U.S. at 255.

Ford contends that there is no evidence of gross negligence in this case.  It maintains that ESC could not have been incorporated into the design of the 2004 Mercury Mountaineer because ESC was incompatible with the vehicle's all-wheel-drive system.  [Record No. 39-1, pp. 5-6; Record No. 51, pp. 3-7]  Meanwhile, the plaintiffs point to deposition testimony from their expert, former Ford engineer Murat Okcuoglu, that any incompatibility between ESC and the all-wheel-drive system was "a simple engineering problem that [could] be resolved."  [Record No. 42-3, p. 21]  They offer extensive evidence that Ford was aware of the risk of rollover in sport utility vehicles (SUVs), as well as ESC's ability to reduce that risk, for several years before 2004.  [*See* Record No. 42, pp. 6-12.]  According to the plaintiffs, Ford delayed incorporating ESC in an effort to save money or increase profits.  [*Id.*, p. 10]  They cite one document in the record that arguably supports this assertion, a July 2001 e-mail among Ford officials in which an engineer suggested that IVD (apparently another name for ESC) need not be made standard

---

[4]  Apparently unaware of this rule, the plaintiffs argue that they are entitled to proceed on their punitive-damages claim if they can produce "'*any* evidence to support an award of punitive damages.'"  [Record No. 42, p. 4 (quoting *Shortridge v. Rice*, 929 S.W.2d 194, 197 (Ky. Ct. App. 1996))]

on the Ford Explorer unless Ford received negative publicity regarding safety in the wake of the *Firestone* litigation.  [Record No. 42-8]

    This evidence, even when viewed in the light most favorable to the plaintiffs, is not sufficient to withstand summary judgment.  While Ford does not deny having known of ESC's safety advantages at the time the 2004 Mountaineer was designed and manufactured, it is likewise undisputed that federal auto-safety regulations did not require vehicles to be equipped with ESC in 2004.[5]  *See Cameron v. DaimlerChrysler Corp.*, No. 5:04-CV-24-JMH, 2005 U.S. Dist. LEXIS 24361, at *25 (E.D. Ky. Oct. 20, 2005) ("Although not dispositive of the issue of punitive damages, th[e] undisputed fact [that the defendant's brake-system design complied with federal safety standards] weighs against punitive damages for pre-sale design defect . . . .") (citing *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 893 (2000) (Stevens, J., dissenting)).  Nor do the plaintiffs challenge Ford's assertion, supported by statistics from the Insurance Institute of Highway Safety, that ESC or an equivalent stability-control feature was unavailable on the majority of SUVs in model year 2004.  [*See* Record No. 51, p. 5]  Moreover, the fact that ESC may have been a safer design, while relevant to the plaintiffs' products-liability claim, does not prove their entitlement to punitive damages.  *Id.*

    In short, the plaintiffs have not produced evidence from which a reasonable jury could find, by clear and convincing evidence, that Ford acted with "wanton or reckless disregard for

---

    [5]  According to Ford, "it was not until April 2007, three years after the subject vehicle was manufactured and many more years after it was designed," that the National Highway Traffic Safety Administration adopted a rule "requir[ing] manufacturers to install ESC systems on new light vehicles over a three-year phase-in period that began in 2008."  [Record No. 51, p. 6 (citing 49 C.F.R. pts. 571, 585)]

the lives, safety or property of others" in its design, manufacture, and sale of the 2004 Mountaineer.  *Phelps*, 103 S.W.3d at 52 (internal quotation marks omitted); *see* KRS § 411.184(2); *Anderson*, 477 U.S. at 255.  As a result, summary judgment is warranted on the issue of punitive damages.

### III.

Based on the foregoing analysis, it is hereby

**ORDERED** that Defendant Ford Motor Company's Motion for Partial Summary Judgment [Record No. 39] is **GRANTED** with respect to punitive damages.  The motion is also **GRANTED** insofar as Ford seeks to prevent separate recovery of hedonic damages by Turner and Stafford and the claim of Kiara Hinkle's estate for loss of family services.  Ford's motion is **DENIED** regarding the issue of whether the Estate of Kiara Hinkle may recover hedonic damages.

This 7th day of September, 2012.



Signed By:

*Danny C. Reeves*  DCR

United States District Judge