UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| KERRY HINKLE, Administrator of the Estate of Kiara Hinkle, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 3: 11-24-DCR |
| V. | ) ) | |
| FORD MOTOR COMPANY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Ford Motor Company has filed a renewed motion *in limine*[1] seeking to exclude all evidence of, reference to, or argument regarding its marketing and advertising materials. [Record No. 73]  Having considered the parties' arguments and authorities cited in connection with this motion, the Court will grant a portion of the relief Ford has requested.

**I.**

On April 2, 2012, Ford filed its first motion *in limine* seeking to prevent the plaintiffs from introducing several items of evidence, testimony and arguments during trial.  [Record No. 38] Specifically, it sought the exclusion of "any reference to or evidence, testimony or argument concerning Ford marketing and advertisements."  [*Id*., p. 6 ¶ 6]  The defendant based its argument on relevancy grounds citing Federal Rules of Evidence ("FRE") 401 and 403.  [*Id*.]

---

[1]  The Court explained the effect of a ruling regarding an *in limine* motion in its September 13, 2012, Memorandum Opinion and Order. [*See* Record No. 68, pp. 1-2.]  That discussion is incorporated herein.

-1-

The plaintiffs opposed Ford's motion, arguing that such evidence is relevant and admissible under Sixth Circuit case law. [Record No. 41, pp. 5-6]  In its reply, Ford argued that because the plaintiffs had not identified the documents they intended to offer, the Court should not address this particular issue until these materials were provided.  [Record No. 50, p. 5]

The Court reserved ruling on Ford's original motion *in limine* regarding its marketing and advertisement materials until the plaintiffs filed their exhibit list.  Notwithstanding this delay, the Court was unable to determine from the exhibit list or other filings what documents were the subject of Ford's motion.  As a result, Ford's motion to preclude reference to, or evidence, testimony, or argument concerning Ford's marketing or advertisement was initially denied without prejudice.  The plaintiffs were given ten days to identify the specific exhibits, evidence, and arguments they intend to offer concerning Ford's marketing and/or advertisements.  Ford was given ten days thereafter to renew its motion *in limine* if it chose to do so.

Pursuant to the Court's September 13, 2012, Memorandum Opinion and Order [Record No. 68], the plaintiffs identified certain items of evidence they intend to introduce concerning Ford's marketing and advertising.  [Record No. 72]  Plaintiffs stated their intent to offer "excerpts from Defendant's website that discuss AdvanceTrac and Electronic Stability Control" and "testimony from Plaintiff Natya Stafford, and her father, Richard Stafford, that Natya Stafford purchased the subject vehicle as a result of Defendant's overall marketing of the Mercury Mountaineer as a safe vehicle." [*Id.*, p. 1] They further identified the intended excerpts from Ford's website as being those referenced "on pages 52-54 of Murat Okçuğlu's expert

-2-

report," [*Id.*] and attached a photocopy of pages 52 to 54 of Okçuoğlu's report as "Exhibit A" to their notice. [Record No. 72-1]

Following the plaintiffs filing of their Notice Identifying Plaintiffs' Exhibits and Arguments Related to Defendant's Marketing and/or Advertisements, Ford filed its renewed motion *in limine*. [Record No. 73] It asserts "[t]his evidence, to the extent it exists, is not relevant to any issue in this lawsuit" and that any negligible probative value of this evidence is substantially outweighed by its prejudice and therefore should be excluded. [*Id.*, p. 2]

## II.

Again, in addressing issues raised by the defendant's motion, the Court incorporates its earlier discussion of FRE 402 and 403. [*See* Record No. 68, pp. 2-3.] The plaintiffs claim that Natya Stafford's 2004 Mercury Mountaineer All-Wheel Drive was defectively designed because it was not equipped with Electronic Stability Control ("ESC") when manufactured by Ford in 2003 and that the defendant's failure to equip her car with such technology proximately caused the plaintiffs' injuries. To better determine the potential relevance and admissibility of the AdvanceTrac and Ford Safety Articles, along with the proposed testimony of Natya and Richard Stafford, the Court must first examine Kentucky law regarding design defects in product liability cases.

Product liability actions in Kentucky are governed by the Kentucky Product Liability Act ("PLA"), K.R.S. § 411.300 *et seq*., regardless of the legal theory advanced. *See Monsanto Co. v. Reed*, 950 S.W.2d 811, 814 (Ky. 1997) (holding that the PLA "applies to all damage claims arising from the use of products, regardless of the legal theory advanced . . . [t]here is no

language in the PLA which suggests that product liability actions mean only those actions based

on strict liability").  K.R.S. § 411.310(1) defines the scope of the PLA and provides that:

> a "product liability action" shall include any action brought for or on account of
> personal injury, death or property damage caused by or resulting from the
> manufacture, construction, design, formulation, development of standards,
> preparation, processing, assembly, testing, listing, certifying, warning, instructing,
> marketing, advertising, packaging or labeling of any product.

Ky. Rev. Stat. Ann. § 411.310(1).  In a Kentucky product liability case, "a plaintiff may recover

in a number of ways, such as under a theory of defective design, defective manufacture or failure

to warn."  *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 251 (Ky. 1995) *overruled on other

grounds by Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.3d 104 (Ky. 2009).

　　　To support a design defect product liability claim, under either theory of negligence or

strict liability,[2] a plaintiff must show that the product was "in a defective condition unreasonably

dangerous to the user or consumer" as designed.  *See Montgomery Elevator Co. v. McCullough*,

676 S.W.2d 776, 780 (Ky. 1984).   However, "proof that technology existed, which if

implemented would feasibly have avoided a dangerous condition, does not alone establish a

defect."  *Brock v. Caterpillar, Inc.,* 94 F.3d 220, 224 (6th Cir. 1996) (quoting *Sexton v. Bell

Helmets, Inc.*, 926 F.2d 331, 336 (4th Cir 1991) ).  Instead, a plaintiff must demonstrate

something greater than it was "theoretically probable that a different design would have been

feasible." *Id.* at 224 (quoting *Ingersoll-Rand Co. v. Rice*, 775 S.W.2d 924, 928 (Ky. Ct. App.

---

[2]   Kentucky courts have routinely held that the difference between negligence and strict
liability product liability claims alleging design defects "is of no practical significance so far as the
standard of conduct required of the defendant is concerned.  In either event, the standard required
is reasonable care."  *See Jones v. Hutchinson Mfg., Inc.,* 502 S.W.2d 66, 70 (Ky. 1973); *see also
Cameron v. DaimlerChrysler, Corp.*, No. 04-24, 2005 U.S. Dist. LEXIS 24361, at *9-10 (E.D. Ky.
Oct. 20, 2005) (analyzing Kentucky state law).

1988)).  Additionally, a plaintiff must establish "more than that a particular injury would not have occurred had the product which caused the injury been designed differently." *Jones v. Hutchinson Mfg., Inc.,* 502 S.W.2d 66, 70 (Ky. 1973).

However, "[l]ike many other state courts, Kentucky courts have encountered difficulty with the meaning of the strict liability concept, 'defective condition unreasonably dangerous.'" *Brock*, 94 F.3d at 224.  In an attempt to clarify this standard, the Supreme Court of Kentucky held that "the question is whether the product creates 'such a risk' of an accident of the general nature of the one in question 'that an ordinarily prudent company engaged in the manufacture' of such a product 'would not have put it on the market.'" *McCullough*, 676 S.W.2d at 780 (quoting *Nichols v. Union Underwear Co., Inc.*, 602 S.W.2d 429, 433 (Ky. 1980) (interpreting § 402A of the Restatement (Second) of Torts (1965)).  Further providing guidance in determining product liability cases, courts have noted a number of important considerations to take into account, such as: "(1) 'feasibility of making a safer product,' (2) 'patency of the danger,' (3) 'warnings and instructions,' (4) 'subsequent maintenance and repair,' (5) 'misuse,' and (6) 'inherently unsafe characteristics.'" *See Brock,* 94 F.3d at 224 (quoting *McCullough*, 676 S.W.2d at 780); *see also Cameron v. DaimlerChrysler, Corp.*, No.04-24, 2005 U.S. Dist. LEXIS 24361, at *9-10 (E.D. Ky. Oct. 20, 2005); *Bush v. Michelin Tire Corp.*, 963 F. Supp. 1436, 1442 (W.D. Ky. 1996).

Thus, for a plaintiff to prevail on a claim that a product is unreasonably dangerous as designed, he or she must not only proffer evidence of a feasible alternative design, but evidence that the alternative design was a safer design. *See Caudill v. Toyota Motor Corp.*, No. 04-333,

-5-

2005 U.S. Dist. LEXIS 29395, at *10 (E.D. Ky Nov. 23, 2005) (citing *Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 41-42 (Ky. 2004)).  Additionally, a plaintiff has the burden of establishing that the alleged defect caused or proximately caused the plaintiff's injuries.  *See Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 507 (6th Cir. 1998).

Under Kentucky law, causation is determined by the substantial factor test.  *See Stevens v. Keller Ladders*, 1 F. App'x. 452, 460 (6th Cir. 2001).  Under this test, the "plaintiff must prove that the defendant's conduct was a substantial factor in bringing about plaintiff's harm." *See King v. Ford Motor Co.*, 209 F.3d 886, 893 (6th Cir. 2000).  While circumstantial evidence may be used to prove causation, "the evidence must be sufficient to tilt the balance from possibility to probability. *See Morales*, 151 F.3d at 507 (quoting *Calhoun v. Honda Motor Co., Ltd.*, 738 F.2d 126, 130 (6th Cir. 1984)).  Further, under Kentucky law, issues of proximate causation are generally questions of fact reserved for the jury.  *See Chandler*, 623 F.2d 1139, 1143 (6th Cir. 1980) (examining Kentucky law).

It is against this backdrop that the Court must analyze the relevance of the plaintiffs' proposed evidence.

## III.

Plaintiffs have identified three pieces of evidence that they intend to offer regarding Ford's marketing and advertising.[3]  [Record No. 72, p. 1]  This evidence consists of (1) two

---

[3]  Ford contends that because (i) the materials designated by the plaintiffs only consist of marketing materials and (ii) no advertisements or advertising materials were referenced, the plaintiffs should be barred from referencing any Ford advertisements during trial.  [Record No. 73, p. 2] Ford asserts that the "deadline for identifying specific materials has now passed," and requests that the Court to enter an order disallowing plaintiffs' use or reference to any Ford advertisements. [*Id.*]  The plaintiffs did not explicitly address this argument in their Response to Defendant's

articles purportedly published on Ford's website, and (2) the testimony of both Plaintiff Natya Stafford and her father, Richard Stafford, that Plaintiff Stafford "purchased the subject vehicle as a result of Defendant's overall marketing of the Mercury Mountaineer as a safe vehicle." Ford addresses these two "categories" of evidence separately in their renewed motion *in limine.* [Record No. 73]

**A.     Ford's Website Materials Referenced in the Expert Report of Murat Okçuoğlu**

After reviewing the parties' filings and the pertinent section of Okçuoğlu's expert report, it appears that there are only two articles from Ford's website which are cited and, therefore, which are the subject of Ford's renewed motion *in limine.*[4]   The first article is cited at footnote 78 of Okçuoğlu's expert report ("AdvanceTrac Article").  [Record No. 72-1, p. 2]  Okçuoğlu quotes the AdvanceTrac article and notes that the article was "printed from

_____

Renewed Motion *in Limine.*  [Record No. 76]  However, it does seem that the plaintiffs use the term marketing and advertisement interchangeably, and do not draw the same distinction between the two as Ford does.  Despite the fact that the deadline for identifying trial exhibits has come and passed, [Record Nos. 11, 68] this issue will not be addressed at this time.  The Court will address any issues regarding the submission of new evidence and objections thereto at the time they arise. Additionally, for ease of reference, the Court will refer to these "advertising and/or marketing materials" as "marketing materials" and will not adopt Ford's distinction between the two at this point.

[4]   Other materials are referenced on pages 52 to 54 of Okçuoğlu's expert report, which discuss Ford's use of ESC.  In particular, Okçuoğlu quotes what he refers to as a "Ford press release".  However, he cites the website of automotive magazine *Autoweek* as the source of this press release.  [Record No. 72-1, p. 1] The plaintiffs only identified "excerpts *from Defendant's website* that discuss AdvanceTrac and Electronic Stability Control" as those they intend to offer concerning Ford's marketing and advertising materials.  [*See* Record No. 72, p. 1 (emphasis added).]  The Court construes Plaintiffs' Notice Identifying Plaintiffs' Exhibits and Arguments Related to Defendant's Marketing and/or Advertisements quite literally and, therefore, will not consider the Ford Press Release as referenced in footnote 73 of Okçuoğlu's report as coming from the website of Autoweek in this Memorandum Opinion and Order.  [Record No. 72-1, p. 1]

http://media.ford.com/newsroom/release_display.cfm?release=13291 on 10/15/2005." [*Id.*, n. 78]  The quoted section of this article gives a brief description of AdanceTrac, its functional purpose, and the intended benefits of the mechanism.  [*Id.*]  The second article is cited as footnote 79 of Okçuoğlu's expert report and is entitled *Ten Ways Ford Leads in Safety* ("Ford Safety Article"). [*Id.*, pp. 2-3]  Okçuoğlu quotes section 1 of this article, entitled *Electronic Stability Control (ESC)*, which describes in basic terms the electronic stability control system, the system's intended benefits, and Ford's current and planned implementation of ESC into all Ford, Lincoln, and Mercury retail cars and trucks "by the end of 2009"as a standard feature.  The article also notes that ESC is "currently standard on all Ford mid- and full-size SUVs."  [*Id.*]  Okçuoğlu references this article as being "[p]rinted from http://media.ford.com/print_doc.cfm?article_id=26550." [*Id.*, p. 3 n.79]

Ford raises three main arguments regarding these articles: (1) the articles cannot be authenticated and lack foundation; (2) the articles are not relevant within the meaning of FRE 401; and (3) the articles are unduly prejudicial and should be excluded under FRE 403.  [Record No. 73, pp. 2-6, 9-10]

### 1.    Authentication and Foundation

Ford's first argument is based upon issues of foundation and authentication.  Specifically, Ford argues that the AdvanceTrac Article "is no longer available by this citation" and that "[p]laintiffs should be precluded from introducing or referencing this yet-unseen document for that reason alone."  [Record No. 73, p. 3]  While the Court acknowledges Ford's argument, it will not grant Ford's motion *in limine* on these grounds.  Issues of authentication and foundation

are issues which are better examined during trial as evidence is presented in context of the parties' arguments and testimony. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (noting that unless evidence is clearly inadmissible on all potential grounds, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in [the] proper context"). Additionally, before the plaintiffs will be able to present these pieces of documentary evidence at trial, they must overcome any authentication and foundation issues in accordance with FRE 901. If the plaintiffs are unable to do so, the articles will not be admitted as a preliminary matter. In short, while the Court will not exclude this evidence at this time, Ford may renew it objections at trial if appropriate.

The Court also notes that while the plaintiffs did not provide actual copies of the AdvanceTrac and Ford Safety Articles (but only incorporated them by reference through copying and pasting pages from Okçuoğlu's expert report which contained quotations from these articles), they were not required to do so. The Court only directed the plaintiffs to "identify the specific exhibits, evidence, arguments which they intend to offer concerning Ford's marketing and/or advertisements." [Record No. 68, p. 9] And the plaintiffs complied with this directive. Additionally, Ford's claim that the AdvanceTrac Article is a "yet-unseen document" would also require the Court to make the assumption that Ford is unable to identify whether the purported article was, in fact, an article published by it and posted to its own website. The Court is unwilling to make such an assumption based on the information which has been provided. For the reasons discussed above, issues of document authentication and foundation are issues ill-fit to be ruled upon through motions *in limine*.

-9-

### 2. Relevancy and 403 Considerations of AdvanceTrac and Ford Safety Articles

#### a. Dates of Publication of Ford Marketing Articles

Ford's first relevancy objection regarding the AdvanceTrac Article and the Ford Safety Article centers on the factual issue of the date of publication of these articles. [Record No. 73, pp. 3-5, 9] It asserts that the plaintiffs "seek to use Ford's marketing materials, presumably from 2005 and 2009, to establish what Ford allegedly knew, and what was allegedly feasible, when designing Natya Stafford's 2004 Mercury Mountaineer AWD," and that "Ford's post-build marketing materials are irrelevant to these questions, and therefore should be excluded." [*Id.*, p. 5] Plaintiffs, however, argue that the AdvanceTrac Article was published in 2003, a year prior to the date of manufacture of the subject vehicle, and that the defendant's Safety Article was published "just two years later" in 2005. [Record No. 76, pp. 1-2] Thus, the Court must initially determine whether these articles are relevant to the factual issues presented based solely on when they were published.

While the date of publication of these articles does factor into determining their relevance, it is not dispositive. Under Kentucky product liability law, for claims of design defect "the proper date of inquiry for determining relevance is the date of manufacture because the principal question involved is the reasonableness of the defendant's design at the time of the product's manufacture." *Bush*, 963 F. Supp. at 1447 (citing *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1524 (1st Cir. 1991); *Elliott v. Brunswick Corp.*, 903 F.2d 1505 (11th Cir. 1990), *cert. denied*, 498 U.S. 1048, 112 L. Ed. 2d 776, 111 S. Ct. 756 (1991); *Gauthier v. A.M.F., Inc.*, 805 F.2d 337, 338 (9th Cir. 1986); *Grenada Steel Indus., Inc. v. Alabama Oxygen Co.*, 695 F.2d

-10-

883, 888 (5th Cir. 1983)).  However, there is no bright-line rule that marketing and/or advertising materials are not relevant simply because they post-date the manufacture of a product, and the Court will not adopt one today.

Moreover, the factual issue of when these articles were published is an issue of authentication and foundation.  As noted above, this issue is better resolved in the full context of trial.  *See Ind. Ins. Co.*, 326 F. Supp. at 846.  The plaintiffs will be required to authenticate and lay a proper foundation for both of these articles if they wish to offer them during trial.  At that time, they will be required to make a showing that both articles were published in the year the plaintiffs claim.

### b.      Lack of Context and Failure to Show Feasibility

Ford next argues that the "articles provide no context regarding the ESC systems described, and no evidence that those specific ESC systems were feasible to implement in Natya Stafford's 2004 Mercury Mountaineer AWD." [Record No. 73, p. 4] Ford also asserts that these articles are too generic and do not "approach[] the type of expert analysis necessary to establish that, had some form of ESC been included on Natya Stafford's All-Wheel Drive Mountaineer, that specific ESC technology would have prevented this specific accident." [*Id.*]

The plaintiffs' construe Ford's arguments for the exclusion of the AdvanceTrac and Ford Safety Articles as being "distilled down to two: lack of causation for the accident, and lack of reliance on the ads by the plaintiff-owner."  They contend that the articles should be read in conjunction with the published study "Potential Effectiveness of Electronic Stability Program" authored by Ford employees, which "discusses the high degree of reduction of rollover accidents

-11-

when ESC is included in a vehicle." [*Id.*, p. 2]  The plaintiffs also assert that further context is given to these marketing articles when read in conjunction with other exhibits that they plan to offer during trial.[5]  They argue that both of these marketing articles support their basic claim that "Ford had available to it a technologically and economically feasible alternative design prior to 2004 that, to a reasonable degree of scientific certainty, would prevent this accident and the resulting damages suffered by Plaintiffs."  [*Id.*]

As noted above, feasibility of a safer, alternative design is relevant to a claim of design defect under Kentucky law.  In fact, proof of a feasible, safer, alternative design is generally necessary to prevail on a design defect claim.  *See McCoy v. Gen. Motors Corp.*, 47 F. Supp. 2d 838, 839 (E.D. Ky. 1998); *see also Busch v. Ansell Perry, Inc.*, No. 01-126, 2005 U.S. Dist. LEXIS 12175, at *7-10 (W.D. Ky. June 16, 2005) (noting that Kentucky jurisprudence "suggests that evidence of a feasible alternative and safer design is required to prove most product design claims") (citing *Toyota Motor Co. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004)).  Normally, issues of feasibility "concern[] the ability of a manufacturer or designer to overcome technological and scientific obstacles in marketing a product."  *See Bush*, 963 F. Supp. at 1450.  While "[e]xpert testimony is probably necessary to show the feasibility of an alternative design which would allegedly have prevented an accident."  *See Stevens*, F. App'x at 458 (internal quotation marks removed), expert testimony is not the only means by which a party can make a showing of feasibility.

_____

[5]  Specifically, the plaintiffs indicate that their Exhibits 4 and 5 provide further context. [Record No. 76, p. 2] Ford has objected to the admissibility of these two exhibits on the grounds of hearsay, lack of personal knowledge and lack of foundation.  [Record No. 63, pp. 3, 7]

As both parties have indicated in their briefs, the Sixth Circuit has found the use of marketing and advertisement materials to be relevant and admissible in support of a design defect product liability claim, even when the plaintiff was unaware of any such advertisements and did not rely on those advertisements in making their purchase. *See Morales*, 151 F.3d at 517. Specifically, under Sixth Circuit precedent, marketing and advertisement materials may be admissible in supporting a design defect product liability claim by aiding the finder-of-fact in determining causation, knowledge, feasibility, and industry standards regarding the alleged design defect — all of which are corollary issues to the plaintiffs' claims. *See id.*

While Ford is correct in its distinction between the facts presented here and in *Morales*, this distinction is not controlling regarding the relevance of the AdvanceTrac and Ford Safety Articles. In *Morales*, the plaintiffs alleged that a 1988 Honda model motorbike was defectively designed because it did not include a safety flag accessory, which Honda had advertised the use of on previous similar models of the motorbike. *See id.* at 507. The *Morales* advertisement pre-dated the manufacture of the alleged model of defective motorbike by about fifteen years, and the court admitted the advertisement "as evidence of the availability of wind flags and of Honda's use of wind flags on similar models. *Id.* at 516-17.

Ford argues that, to be "relevant to whether a design is defective *when prepared*, the advertisement must reflect knowledge, feasibility, and industry standards known or available to the manufacturer *at the time of the allegedly defective design*." [Record No. 73, p. 5 (internal citation omitted)] While this is a correct assertion, in reviewing the record and the article excerpts which are the subject of this motion *in limine*, the Court cannot definitively conclude

-13-

that either the AdvanceTrac or Ford Safety Articles are not relevant or that they should be excluded under FRE 403. As noted above, the dates of publication of these articles are not controlling; however, they are important factors in weighing the relevance and probative value of these pieces of evidence, in addition to the context in which they are offered during trial.

Other courts within the Sixth Circuit have found that information relating not only to feasibility of an alternative design, but also information regarding the effectiveness of an alternative design and the defendant's knowledge of this technology is relevant in design defect product liability claims. *See, e.g. Brownlow v. GMC*, No. 05-414, 2007 U.S. Dist. LEXIS 67973, at \*19 (W.D. Ky. Sept. 13, 2007). Much like the *Morales* advertisements, if the AdvanceTrac Article was published in 2003 (thus pre-dating the manufacture of the subject vehicle), it would be relevant to show Ford's knowledge of an alternative safer technology and the feasibility of such design.

But even if the articles do not predate the manufacture of the subject vehicle, the Court is not willing at this time to adopt Ford's argument that these marketing articles are not relevant regarding what Ford "allegedly knew, and what was allegedly feasible, when designing Natya Stafford's 2004 Mercury Mountaineer AWD." [Record No. 73, p. 5] The plaintiffs have noted that when these articles are read in conjunction with other exhibits the AdvanceTrac and Ford Safety Articles are given further context and support their claim of relevancy. Therefore, because the Court cannot not definitively determine the relevancy of either the AdvanceTrac nor Ford Safety Articles at this stage in the litigation, the Court will deny Ford's motion *in limine* regarding the two articles.

-14-

c.     **Lack of Credible Evidence of Subject Vehicle's "Intended Path"**

Finally, Ford argues that, "to the extent Plaintiffs seek to use Ford's 2005 marketing article as evidence that, had ESC been included on Natya Stafford's 2004 Mercury Mountaineer AWD, that system would have helped the driver stay on her 'intended path,' that effort must also fail." [Record No. 73, p. 6] It contends that, because there is no "credible evidence of the driver's 'intended path' in this case," Ford's 2005 marketing article provides "no support for Plaintiffs' argument that ESC would have changed the outcome of this event." [*Id.*] To support this claim, Ford cites and quotes excerpts of the deposition testimony of Murat Okçuoğlu, which it contends support its claim that there is "no credible evidence of the driver's 'intended path' in this case." [*Id.*]

The issue of whether ESC would have prevented the plaintiffs' injuries in this case, either in totality or in degree of severity, goes to the heart of this product liability lawsuit: did Ford's failure to equip Natya Stafford's 2004 Mercury Mountaineer with ESC render the vehicle defective and proximately cause the plaintiffs' injuries? Whether there was a determinable "intended path" of the subject vehicle and whether the inclusion of the ESC technology would have made any difference in the outcome of this incident are issues of fact that will be presented to and determined by the jury. Ford's own argument on this point undercuts its claim that their AdvanceTrac Article is not relevant. As noted above, this article discusses and is related to one of the main factual questions in this lawsuit and, therefore, is relevant. If Ford wishes to offer this deposition testimony of Okçuoğlu at trial as evidence in its case-in-chief or during cross-examination, it may do so at that time, but the Court will not rule on this substantive issue in a

-15-

motion *in limine*.  *See Petty v. Metro. Gov't of Nashville*, 687 F.3d 710, 720-21 (6th Cir. 2012) (Trial courts should not allow motions *in limine* to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss.).  For the foregoing reasons, the Court will deny Ford's motion *in limine* concerning the AdvanceTrac and Ford Safety Articles.

### B.    Testimony of Natya and Richard Stafford

The second "category" of evidence the plaintiffs intend to introduce regarding Ford's marketing and advertising consists of the testimony of Plaintiff Natya Stafford and Richard Stafford.  [Record No. 72, p. 1]  Specifically, the plaintiffs plan to illicit the testimony from both of these witnesses that "Natya Stafford purchased the subject vehicle as a result of [Ford's] overall marketing of the Mercury Mountaineer as a safe vehicle."  [*Id.*]  Ford argues preclusion of this testimony on grounds of relevancy, lack of personal knowledge, hearsay, and undue prejudice.  [Record No. 73, pp. 6-10]  The plaintiffs did not respond to Ford's arguments regarding the intended proposed testimony of Natya and Richard Stafford.  [Record No. 76]

Ford makes a number of arguments in support of its contention that any testimony from Natya or Richard Stafford regarding Ford's marketing and advertising materials lacks relevance. It contends that the plaintiffs have not: (1) provided any context to the Stafford's proposed testimony; (2) limited their purported impressions to advertising relating to 2004 Ford Mercury Mountaineers; nor (3) asserted that claim that "Ford's 'overall marketing' of the Mountaineer was false, or that the marketing resulted in Plaintiffs' injuries."  [Record No. 73, p. 8]  Ford also notes that when both Natya and Richard Stafford were deposed "neither Natya nor her father suggested that either had seen or relied upon Ford's advertising or marketing."  [*Id.*]

As the defendant correctly asserts, the specific question in this case is whether Natya Stafford's 2004 Ford Mercury Mountaineer was defectively designed "because Ford did not offer ESC on her all-wheel drive vehicle." [*Id.*, pp. 8-9]  Kentucky does not follow a consumer expectation test in design defect cases and, therefore, neither Natya and Richard Stafford's impressions of Ford's marketing and advertisements, nor their reasoning for purchasing the subject vehicle are relevant. *See Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003) (noting that Kentucky courts use the risk-utility analysis to assess decisions made by manufactures with respect to design of their products); *see also Toyota Motor Corp. v. Gregory*, 136 S.W.3d 35, 42 (Ky. 2004) (noting that in applying the risk-utility test, the available alternative design(s) are balanced with risk of the chosen design).

Potential liability in this case is not based upon Ford's marketing or advertisement of 2004 Mercury Mountaineer as a safe vehicle *per se*.  The admissibility of any of Ford's advertisements and marketing materials is derived from these materials' ability to provide evidence of feasibility, knowledge on the part of Ford, and industry standards.  Testimony from the Stafford's regarding why they purchased the vehicle or why they believed the vehicle was "safe" is not relevant to the main legal question in this case.  Moreover, the plaintiffs have not asserted that their injuries resulted from — or were even tangentially related to — the marketing or advertising of the subject vehicle.

Thus, the Court concludes that testimony from Natya or Richard Stafford that Natya Stafford purchased the vehicle as a result of Ford's overall marketing of the Mercury Mountaineer as a safe vehicle is not relevant to the legal issues presented in this case.  Further,

-17-

any potential relevance is outweighed by Rule 403 considerations.  The Court, therefore, will grant Ford's motion *in limine* regarding the testimony of Natya and Richard Stafford concerning Ford's marketing and advertising and their testimony about why Natya purchased the subject vehicle.

## IV.

Based on the above discussion and analysis, it is hereby

**ORDERED** as follows:

(1)     Defendant Ford Motor Company's  Renewed Motion *in Limine* to exclude the testimony of Plaintiff Natya Stafford and Richard Stafford regarding Ford's advertising and marketing, and testimony that Stafford purchased the subject vehicle as a result of Ford's overall marketing of the Mercury Mountaineer as a safe vehicle  [Record No. 73] is **GRANTED**.

(2)     Defendant Ford Motor Company's Renewed Motion *in Limine* to exclude excerpts from Ford's marketing materials, specifically the AdvanceTrac and Ford Safety Articles [Record No. 73] is **DENIED**.

This 20th day of November, 2012.

Signed By:

*Danny C. Reeves* DCR

United States District Judge

-18-