UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| KERRY HINKLE, Administrator of the Estate of Kiara Hinkle, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 3: 11-24-DCR |
| V. | ) ) ) | |
| FORD MOTOR COMPANY, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of Defendant Ford Motor Company's Motion to Strike Testimony of Dr. James Baker and Dr. James Bilbo. [Record No. 99] The defendant's motion is based upon the plaintiffs' alleged failure to comply with the disclosure requirement of Rule 26(a)(2) of the Federal Rules of Civil Procedure. For the following reasons, the Court will grant the defendant's motion, in part, and will deny the motion, in part.

**I.**

This is a product liability action that arises out of a single-vehicle accident. The driver, Kiara Hinkle, was killed in the accident, and passengers Jason Turner and Natya Stafford were injured. On May 2, 2011, the plaintiffs filed this action. The plaintiffs contend that the subject-vehicle – a 2004 Mercury Mountaineer All-Wheel Drive – was defectively designed because it was not equipped with Electronic Stability Control ("ESC") when manufactured by the defendant.

The plaintiffs were required to disclose the identity of their expert witnesses, along with their written reports, no later than February 28, 2012. [Record No. 23] On December 1, 2011, the plaintiffs provided the defendant with expert disclosures pursuant to Rule 26(a)(2). [*See* Record No. 99-3; *see also* Record No. 53, pp. 4-5.] As part of these disclosures, the plaintiffs identified Dr. Baker and Dr. Bilbo as treating physicians under Rule 26(a)(2)(C). Dr. Bilbo was identified as "treating Plaintiff Natya Stafford for injuries to her knee," and Dr. Baker was identified as "treating Plaintiff Jason Turner for injuries to his left arm and wrist [and] may also treat Turner for injuries to his right arm and wrist." [Record No. 99-3, p. 3] The plaintiffs attached summaries of each doctor's opinion and supporting facts to the initial disclosures.

The defendant contends that both Dr. Baker and Dr. Bilbo are retained experts, not treating physicians and, therefore, the plaintiffs were required to disclose their opinions in accordance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. The defendant argues that the plaintiffs' failure to provide expert reports requires that the testimony of both doctors be stricken in accordance with Rule 37 of the Federal Rules of Civil Procedure. The plaintiffs counter that Dr. Baker and Dr. Bilbo are actually treating physicians and that their opinions were properly disclosed in accordance with the less rigorous disclosure standard of Rule 26(a)(2)(C). Additionally, the plaintiffs argue that, to the extent the Court finds that the testimony of either doctor should have been disclosed pursuant to Rule 26(a)(2)(B), any mistake was harmless and does not warrant exclusion.

## II.

A.      **Retained Expert vs. Treating Physician**

A witness who is "retained or specially employed to provide expert testimony in the case" must provide a written report containing certain required disclosures. Fed. R. Civ. P. 26(a)(2)(B). However, for witnesses who are not required to file a written report, a disclosure must simply be made in accordance with the less onerous disclosure standard Rule 26(a)(2)(C).[1] A treating physician is generally exempt from the written report requirement for expert testimony to the extent that his or her opinions were formed during the course of treatment. *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007); *see also Roberts v. Solideal Tire, Inc.*, 06-14-DLB, 2007 WL 2990536, at *4 (E.D. Ky. Oct. 10, 2007). Further, the Advisory Committee Note to Rule 26 states that a "treating physician . . . can be deposed or called to testify at trial without any requirement for a written report." *Fielden*, 482 F.3d at 869 (alteration in original).

Rule 26(a)(2) was amended in 2010, and the Advisory Committee Notes indicates that the changes to Subdivision (a)(2)(C) "resolve[] a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." Fed. R. Civ. P. 26 advisory committee's note (Subdivision (a)(2)(C)). The

---

1  Rule 26(a)(2)(C) states:

> (C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
>
> > (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> >
> > (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

Advisory Committee Notes also state that the disclosure requirements under Subdivision (a)(2)(C) are "considerably less extensive than the report required by Rule 26(a)(2)(B)," and that courts "must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id.* Further, "[a] witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians . . . Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present." *Id.*

"Generally a treating physician can provide expert testimony regarding a patient's illness, the appropriate diagnosis, and the cause of the illness even if the physician is not among the world's foremost authorities." *Thomas v. Novartis Pharms. Corp.*, 443 F. App'x 58, 62 (6th Cir. 2011). However, a treating physician is not permitted to testify to issues beyond those covered in ordinary medical training. *Fielden*, 482 F.3d at 871-72.

The Sixth Circuit has held that a treating physician can testify solely within the scope of his own diagnosis and treatment. *See Ridder v. City of Springfield*, 108 F.3d 1377 (Table), 1997 WL 117024, at *4 (6th Cir. Mar. 13, 1997); *see also Fielden*, 482 F.3d at 871 ("The determinative issue is the scope of the proposed testimony." (internal quotation marks omitted)). Therefore, a Rule 26(a)(2)(B) report "is not required when a treating physician testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through

actual treatment and from the plaintiff's records up to and including that treatment." *Fielden*, 482 F.3d at 871. "Courts attempting to determine whether a physician's testimony regarding causation falls into this 'core' have considered factors such as: (1) whether the physician reached his conclusion at the time of treatment; (2) whether the opposing party would be surprised by the testimony; (3) whether the condition at issues leaves room for debate as to the specific ailment and its sources; (4) whether the physician relied upon ordinary medical training in drawing his conclusion; and (5) whether the physician will rely on tests, documents, books, videos, or other sources not relied upon during treatment." *Gaspar v. Dicks*, No. 08-13707, 2011 U.S. Dist. LEXIS 136571, at *11 (E.D. Mich. Nov. 29, 2011); *see also Gorajczyk v. City of St. Clair Shores*, No. 08-14764, 2010 U.S. Dist. LEXIS 83765, at *12-13 (E.D. Mich. Aug. 17, 2010).

### B. Rule 37 of the Federal Rules of Civil Procedure and Failure to Comply with Disclosure Requirements of Rule 26(a)

Rule 26(a) requires that a party make expert disclosures at the times and in the sequence that the court orders. *See* Fed. R. Civ. P. 26(a)(2)(D). If these expert disclosures are not made, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37; *see also Roberts ex rel. Johnson v. Galen of Virginia*, 325 F.3d 776, 782 (6th Cir. 2003) ("Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a) . . . [and] it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." (internal quotation marks omitted)).

The test for exclusion under Rule 37(c) is "very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (internal quotation marks omitted).  Rather, the Court must determine whether "there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Id.* (internal quotation marks omitted).  An omission is "harmless" if it involves "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance ex rel. Hammons v. United States*, No. 98-5488, 1999 U.S. App. LEXIS 14943, at *17 (6th Cir. June 25, 1999) (emphasis omitted).

### III.

**A.     Dr. James Baker**

As noted above, Ford argues that plaintiffs' failure to provide an expert report under Rule 26(a)(2)(B) for Dr. Baker requires that his testimony be stricken.  Its argument is premised on the assertion that Dr. Baker is a retained expert and not a treating physician.  Alternatively, Ford argues that Dr. Baker's testimony should be limited to matters within the permissive core of issues pertaining to his treatment of Turner.  Ford contends that Dr. Baker did not actually treat Turner, therefore, he cannot be considered a treating physician.  Additionally, the defendant argues that comments made by Dr. Baker in his clinical notes and during his deposition indicate that he falls into the category an expert retained in preparation for trial.  Conversely, the plaintiffs assert that Dr. Baker did, in fact, treat Turner.  Further, any misconception regarding

the circumstances under which Turner retained the services of Dr. Baker is explained in the sworn affidavit of Kevin F. Hoskins, Turner's attorney. [Record No. 105]

On December 1, 2011, the plaintiffs disclosed Dr. Baker as a treating physician due to his treatment of Turner's left arm and wrist. [Record No. 99-3, p. 3] Dr. Baker is a specialist in hand and upper extremity surgery. Dr. Baker saw Turner on four separate occasions from November 4, 2011, through March 29, 2012. Following Turner's initial visit, Dr. Baker prepared a letter which addressed questions from Turner's attorneys concerning Turner's injuries. [Record No. 99-4] This letter was disclosed to the defendant on December 1, 2011. [Record No. 106, p. 4] In this report, Dr. Baker indicates that he is providing this letter "in response to a request for an opinion regard[ing] your client Jason Turner." [Record No. 99-4, p. 1] Further, the letter indicates that the findings contained in the report are his opinion based on his examination of Turner and a review of Turner's medical records, "specifically those pertinent to his orthopaedic injuries." [*Id.*] The report goes on to address a number of issues regarding only Turner's left arm, and notes that "at present [Turner] qualifies for a 10% whole body impairment." [Record No. 99-4, p. 4]

Despite the fact that Dr. Baker indicated that he was not currently treating Turner at the time he authored his November 23, 2011 letter,[2] upon review of all of Dr. Baker's clinical notes and reports, it appears that Dr. Baker did treat Turner regarding his left upper extremity and left wrist. Specifically, Dr. Baker's December 20, 2011 Clinical Notes indicates that he discussed

---

2  In response to the question: "In your opinion, is the treatment you have provided Mr. Turner for the 4-11-10 automobile crash reasonably necessary," Dr. Baker states: "This question is not applicable, as Mr. Turner is currently not receiving any specific treatment recommendations from me." [Record No. 99-4, p. 2]

and agreed with Turner "to proceed with full effort in regaining as much function as possible of his left wrist." [Record No. 99-7, p. 1] Dr. Baker's notes indicate that he again reviewed Turner's medical history, and proceeded to perform another physical examination of the left upper extremity. [*Id.*] Dr. Baker's notes contain observations regarding Turner's right upper extremity. His Clinical Notes also outline a three-part treatment plan. Specifically, it states:

> 2. I have recommended and referred [Turner] back to hand therapy for evaluation and reforming of his splints as well as instructions on a complete home exercise program specifically with splint wear 2-3 times daily. We discussed that there is a time dependent nature of this treatment, and that his compliance is again necessary.
>
> 3. Return to see me in approximately six weeks to follow up on [Turner's] improvements.

[*Id.*]

Dr. Baker was also deposed on October 25, 2012, by counsel for the plaintiffs and the defendant. [Record No. 99-5; *see also* Record No. 101-1.] During his deposition, Ford's counsel asked Dr. Baker whether he considered himself Turner's "treating physician." In response, Dr. Baker answered, "Mr. Turner presented to my office with some concerns regarding the loss of range of motion to his wrist; he then sought treatment from me and we continued to treat." [Dr. Baker Deposition 25:18–25; Record No. 99-5, p. 7] Dr. Baker also noted during his deposition certain degrees of improvement which Turner had achieved from his first visit to his last appointment on March 19, 2012. [*See, e.g.,* Dr. Baker Deposition 30:7–25, 31:1-2, 33:2-23; *see also* Record No. 99-5, pp. 6-7.]

Based on the foregoing, the Court concludes that Dr. Baker is one of Turner's treating physicians, and not a retained expert. To the extent that Ford relies on Dr. Baker's

representation in his November 23, 2011 letter, and November 4, 2011 Clinic Notes, that he is providing services at the request of Turner's attorney and in anticipation for a "request for permanent impairment, prognosis and/or work restriction," this representation is not controlling.[3] [Record No. 99-4, p. 1; Record No. 99-6, p. 2]

Moreover, the testimony regarding causation and Dr. Baker's opinion regarding Turner's left wrist and upper left extremity appear to have been formulated during his treatment of Turner. Dr. Baker's findings are based on his examination of Turner and a review of his medical records. Thus, because his opinions concerning Turner's left wrist and upper left extremity are based on his "personal knowledge" and are within the "permissive core" of his treatment of Turner a Rule 26(a)(2)(B) expert report is not required.  *Fielden,* 482 F.3d at 871.

### B.     The Scope of Dr. Baker's Testimony

Alternatively, Ford argues that if Dr. Baker is found to be a treating physician, his testimony should be limited to treatment of Turner's grip and mobility in his left wrist. [Record No. 99-1, p. 14]  Specifically, the defendant argues that testimony regarding Turner's (i) 2010 surgeries and procedures, (ii) injuries and procedures to his right arm, and (iii) 2010 discharge and post-surgical records must be excluded.  Ford contends that this testimony falls outside the permissive core of any treatment Dr. Baker might have provided to Turner.

---

3    Turner's attorney has satisfactorily explained the circumstances of putting Turner in contact with Dr. Baker. Hoskins represents that he recommended in October, 2011, at Turner's request, that he seek an evaluation and treatment from Dr. Baker. [Record No. 105, p. 1] At that time, Turner was temporarily living in Northern Kentucky participating in a co-op program offered by the University of Kentucky and General Electric. During this program, Turner complained that he was having problems with grip strength and an inability to turn his wrist. Turner then asked his attorney about seeing a specialist. [*Id.,* pp. 1-2] Hoskins states he then learned of Dr. Baker from one of his nurse paralegals that Dr. Baker was the "main hand and arm specialist" in the area. [*Id.*, p. 2] Once Turner's co-op program in Northern Kentucky ended, Turner returned to Lexington to resume classes at the University of Kentucky.

The Court agrees, in part. Having found that Dr. Baker was one of Turner's treating physicians, his testimony will be limited to issues pertaining to the "permissive core" of his treatment of Turner. Since Dr. Baker only treated Turner for issues regarding his left wrist and upper extremity, his testimony will be limited to these issues.[4] Further, Dr. Baker will be allowed to testify to his treatment of Turner and issues pertaining to that treatment, "based on what [he] learned through actual treatment and from the plaintiff's records up to and including that treatment." *Fielden*, 482 F.3d at 871. However, any testimony concerning information

---

4   To the extent that the plaintiffs seek to have Dr. Baker provide opinion testimony concerning Turner's fractured vertebrae, fractures in his right arm, fractured ribs, or collapsed lung, this testimony falls outside of the permissive core of Dr. Baker's treatment of Turner. Therefore, it will be excluded. The plaintiffs contend that Dr. Turner did not "express any opinions in his trial deposition testimony" regarding these injuries and that his testimony concerning these injuries is entirely based "on the contents of detailed hospital records." [Record No. 106, p. 8 (citing Am. Law of Prods. Liability 3d Treatise, § 4:51; *Goodwin v. CSX Trans., Inc.*, No .3:07-CV-483, 2010 U.S. Dist. LEXIS 81772 (W.D. Ky. Aug. 10, 2010))] The *Goodwin* court found that "expert witnesses are generally necessary, indeed essential, in product liability cases, as they are in medical malpractice actions, to prove such matters as a product defect and proximate causation, unless of course the nature of the defect and resultant injury are so obvious to fall within the general knowledge of the ordinary person." *Id.* at *5-6 (quotation marks and citation omitted).

While this is a correct citation of the law, the plaintiffs' proposed application of this rule is flawed. Dr. Baker did not testify during his deposition regarding his opinion concerning the permanency of injury to *both* Turner's left and right wrists and upper extremities. [*See* Dr. Baker Deposition, 11:20–12:25; Record No. 99-5, pp. 3-4.] Because Dr. Baker did not treat Turner for any issues regarding his right wrist or upper right extremity, his opinions concerning the permanency of these injuries is improper under the less stringent disclosure requirements of Rule 26(a)(2)(C). In short, to the extent that the plaintiffs seek to provide any testimony from Dr. Baker regarding his opinion of any injuries other than injuries to the left wrist and upper left extremity, this testimony is outside Dr. Baker's treatment of Turner. Because the plaintiffs did not file a Rule 26(a)(2)(B) expert report concerning these issues, this testimony will be excluded. *See Fielden,* 482 F.3d at 871.

The plaintiffs also cite *Fielden*, 482 F.3d 866, for the proposition that a treating physician may provide testimony concerning prior medical records of a patient. While this is correct, the breadth of prior medical records is limited to those which pertinent to issues being treated by the doctor. *See id.* at 871 (noting that a Rule 26(a)(2)(B) report "is not required when a treating physician testifies within a permissive core *on issues pertaining to treatment*, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment"). Thus, Dr. Baker's testimony regarding any prior medical records will be limited to those records concerning Turner's left wrist and upper left extremity.

contained in Turner's medical records is limited to the extent it deals with his diagnosis and treatment of Turner's upper left extremity and left wrist. In addition, he is not permitted to testify beyond those issues covered in ordinary medical training. Likewise, Dr. Baker's testimony regarding causation is permissible, but it too is limited to issues concerning Turner's upper left extremity and left wrist.

### B. Dr. James Bilbo

Ford does not dispute that Dr. Bilbo treated Natya Stafford for reports of pain in her right knee. Nevertheless, it argues that Dr. Bilbo's opinions regarding causation of Ms. Stafford's knee injury were reached in anticipation of litigation, and in response to questions posed by counsel. Thus, Ford contends that Dr. Bilbo's causation opinion testimony regarding Ms. Stafford's knee pain should be excluded. [Record No. 99-1, p. 16]

On December 1, 2011, the plaintiffs disclosed Dr. Bilbo as treating Stafford[5] for issues of pain in her right knee. [Record No. 99-3, p. 3] Dr. Bilbo is an orthopedic surgeon, with a specialty in sports medicine and surgery of the knee and shoulder. [Dr. Bilbo Deposition, 7:11-12; Record No. 100-1, p. 7] Stafford first saw Dr. Bilbo on November 7, 2011,[6] concerning pain in her right knee. After her initial appointment with Dr. Bilbo, Stafford saw Dr. Bilbo an additional five times before he performed arthroscopic surgery on her right knee on May 18,

---

5     Stafford had a bilateral amputation at the age of twelve due to a congenital condition. [Record No. 107, p. 3]

6     The plaintiffs assert that the lapse in time between the accident and the surgery on Stafford's right knee was due to her school load and work. [Record No. 107, p. 3]

2012. Following Stafford's surgery she underwent physical therapy in Lexington, Kentucky.

On November 17, 2011, the plaintiffs provided the defendant with a letter prepared by Dr. Bilbo, which summarized his opinions and supporting facts. Dr. Bilbo recommended surgery for Stafford's right knee and opined that this injury "related to the motor vehicle accident sustained on 4/11/10." [Record No. 99-12, p. 1] Additionally, he stated that if the anticipated surgery was successful, based on the *AMA Guidelines*, Stafford would suffer from a 1% impairment to her whole body. [*Id.*] Dr. Bilbo states that he reached his opinion based on what he was told by Stafford, his own medical exams of the patient, as well as her medical history and "the nature of the pathology." [Dr. Bilbo Deposition, 14:7-8; Record No. 100-1, p. 14]

Because Dr. Bilbo treated Stafford's right knee, he may provide opinion testimony regarding his treatment of Stafford's knee. *See Fielden*, 482 F.3d at 871. Testimony regarding Stafford's prior medical records is permitted to the extent these records deal with Stafford's right knee, and are issues which are not beyond those covered in ordinary medical training. *See id.* Additionally, Dr. Bilbo will be permitted to testify regarding his conclusions of causation of Stafford's right knee injury, to the extent those conclusions do not go beyond the scope of his own treatment and diagnosis. *See id.* at 870. However, much like Dr. Baker's testimony, Dr. Bilbo's testimony will also be limited to issues pertaining to his treatment of Stafford's right knee.[7]

---

[7] For instance, Dr. Bilbo testified to issues concerning a pulmonary contusion suffered by Stafford following the car accident. [*See* Dr. Bilbo Deposition, 21:20–24:9.] Because this falls outside the permissive core of his treatment of Stafford, and because the plaintiffs did not provide a Rule 26(a)(2)(B) expert report regarding this issue, this testimony will be excluded. *Fielden*, 482 F.3d at 871.

### C. Exclusion under Rule 37 of the Federal Rules of Civil Procedure

While not determinative, factors under Rule 37(c) of the Federal Rules of Civil Procedure were also considered. To the extent that Dr. Baker and Dr. Bilbo are allowed to provide expert opinion testimony, this testimony will be limited to issues within the permissive core of their treatment of Turner and Stafford, respectively. The Court also considers the fact that the parameters of these doctors' testimony was disclosed in detail to Ford in the plaintiffs December 1, 2011 Expert Disclosures. [Record No. 99-3] Ford did not request nor take a discovery deposition of either Dr. Baker or Dr. Bilbo. The trial deposition of Dr. Baker was conducted on October 25, 2012. However, Ford did not file its motion to strike regarding his testimony until April 29, 2013. Further, both Stafford and Turner provided Ford with signed medical authorization which allowed it to obtain records and medical bills directly from each of the plaintiffs medical providers. Pursuant to this agreement, Ford's counsel obtained all medical records and bills directly from the providers and then supplied copies to plaintiffs' counsel. Under this arrangement, Ford had the ability to make itself aware of the contents of all of the plaintiffs' medical records and bills.

As previously discussed, Rule 26(a)(2) is intended to limit unfair surprise regarding expert's testimony. Here, it appears that Ford was made aware of the parameters of the proposed

---

Ford also argues that Dr. Bilbo's opinion testimony regarding a variety of medical bills submitted by other doctors, some of which predated the car accident, should have been disclosed in a Rule 26(a)(2)(B) expert report and, therefore, should now be stricken. While the Court is inclined to agree that this testimony goes beyond Dr. Bilbo's treatment of Stafford, the Court will defer ruling on this specific issue because the defendant did not provide the Court with copies of the specific medical bills at issue. *See Barnes v. CUS Nashville, LLC*, No. 3:09-CV-764, 2011 U.S. Dist. LEXIS 46457, at *35-36 (noting that opinion testimony regarding medical bills of other doctors is subject to the "full Rule 26 disclosures").

testimony of Dr. Baker and Dr. Bilbo through the plaintiffs' Rule 26(a)(2)(C) disclosures and through copies of all medical records from the plaintiffs' medical providers.  Thus, in addition to the above analysis, to the extent that the Court has denied the defendant's motion to strike, the Court also finds that the plaintiffs' failure to comply with Rule 26(a)(2)(C) is harmless. Therefore, it does not warrant exclusion under Rule 37(c). *Bessemer & Lake Erie R.R. Co.,* 596 F.3d, at 370.

### IV.

For the reasons discussed above, it is hereby

**ORDERED** that Defendant Ford Motor Company's Motion to Strike Testimony of Dr. James Baker and Dr. James Bilbo [Record No. 99] is **GRANTED**, in part, and **DENIED**, in part. Dr. James Baker and Dr. James Bilbo's testimony will be limited to issues concerning their treatment of Jason Turner and Natya Stafford.  Dr. Baker and Dr. Bilbo will be allowed to testify regarding issues of causation and prior medical records, to the extent that testimony pertains to their treatment of Turner and Stafford.

This 13th day of May, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge